UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALTIMORE AIRCOIL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOLITAIRE OVERSEAS, <br><br> Defendant. | Case No. 1:22-cv-00952-KES-BAM <br><br> **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT SOLITAIRE OVERSEAS** <br><br> (Doc. 23) <br><br> FOURTEEN-DAY DEADLINE |

Currently pending before the Court is Plaintiff Baltimore Aircoil Company, Inc.'s application for entry of default judgment against Defendant Solitaire Overseas filed on November 17, 2023, and as amended on January 4, 2024. (Docs. 23, 28.) The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Defendant did not file a timely opposition to the motion.[1] L.R. 230(c). The matter is deemed submitted. L.R. 230(g).

Having considered the application, as amended on January 4, 2024, and the record in this action, the Court will recommend Plaintiff's application for default judgment against Defendant Solitaire Overseas be granted.

///

### I.     FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Defendant was not served with a copy of the application for default judgment. (*See* Doc. 23-1 at 8 ("Because Solitaire has not appeared, it was not issued written notice of this application. *See* Fed. R. Civ. P. 55(b)."); Doc. 23-4 at 2.)

1

On July 29, 2022, Plaintiff filed this action seeking damages caused by Defendant's breach of a contract to supply stainless steel tubes. Plaintiff asserted that Defendant breached its express warranty and the implied warranty of merchantability by supplying Plaintiff with defective tubes. (Doc. 1, Compl.) According to the complaint, Plaintiff is in the business of making evaporative cooling solutions and thermal storage equipment for HVAC, industrial, and refrigeration marketplaces. (Compl. ¶ 2.) Defendant, which is organized under the laws of the Republic of India, is in the business of manufacturing and selling tubes to be used in heat exchangers and conditioners. (*Id.* ¶ 3.) Defendant reportedly sells tubes to customers in Tokyo, Silicon Valley, Singapore, Seoul, New York, and San Francisco, among other cities. (*Id.* ¶ 4.)

On or about August 8, 2019, Plaintiff sent Defendant a purchase order for 927,850 feet of stainless steel tubes at a price of $1.57 per foot. (*Id.* ¶¶ 8, 9 and Ex. 1.) The purchase order required the tubes to conform to "ASME SA249 TP316L." ASME standards are published by the American Society of Mechanical Engineers and are world-recognized specifications for certain materials, including stainless steel tubes. (*Id.* ¶ 10.) The purchase order also included two lists entitled "Functional Description" and "Design Requirements," which provided specific requirements as to, among other things, the welding and thickness of the tubes. (*Id.* ¶ 11.) The purchase order instructed Defendant to confirm its receipt by returning a copy to Plaintiff via fax or email and to note any price or delivery changes. (*Id.* ¶ 12.)

On December 16, 2019, Defendant confirmed its acceptance of the purchase order by sending Plaintiff a commercial invoice. The invoice warranted that the tubes would be "316 Tube ASME SA249 TP316L" and stated: "ALL MATERIALS IN FULL COMPLIANCE WITH ASME SA249/ASTM A249 STANDARDS" and "ALL TUBES SHALL BE 100 PERCENT EDDY CURRENT TESTED (ECT)." (Compl. ¶ 13 and Ex. 2.) Plaintiff paid Defendant in full for the Tubes and received them in Madera, California in twelve separate shipments beginning in September 2019, and concluding in May 2020. (*Id.* ¶¶ 14, 15.) In late Summer and early Fall of 2020, Plaintiff began to incorporate the tubes into equipment it was fabricating. The tubes leaked. (*Id.* ¶ 16.)

Plaintiff submitted samples of the tubes to Sheppard T. Powell Associates LLC, an

1  independent agency, for metallurgical evaluation.  The purpose of the examination was to
2  determine the cause of the leaks.  (Compl. ¶ 17.)  Following the metallurgical evaluation,
3  Sheppard T. Powell Associates LLC provided a report dated November 3, 2020.  The report
4  concluded that the "stainless steel tube failed at multiple locations due to inadequate welding."
5  (*Id.* ¶ 18 and Ex. 3.)  The report also concluded that the thickness of the tube walls was below the
6  specified minimum in the purchase order.  (*Id.*)

7  After receiving the report, Plaintiff notified Defendant of the tubes' failure and submitted
8  to Defendant a "Supplier Corrective Action Request" dated November 16, 2020 (the "SCAR").
9  (Compl. ¶19 and Ex. 4.)  In response to the SCAR, Defendant acknowledged the tubes' failure
10 and identified the likely root cause as "burr which got stuck on the edges of slit during the slitting
11 operation," which in turn causes "burn out at molten metal during the tube welding."  (*Id.* ¶ 20
12 and Ex. 4.)

13 In March 2021, Defendant told Plaintiff that the manufacturer of the tubes would replace
14 any unused tubes that failed testing.  Defendant never offered to replace the defective tubes and
15 refused to pay for testing.  (Compl. ¶¶ 21, 22.)

16 In April 2021, Plaintiff directed another independent agency, Mistras Group, Inc., to
17 perform eddy current tests on 13,000 of the tubes.  An eddy current test is used to locate flaws in
18 welds.  (Compl. ¶ 23.)  Approximately twenty-five percent of the tubes failed eddy current
19 testing.  (*Id.* ¶ 24 and Ex. 5.)  Plaintiff informed Defendant of the test results.  (*Id.* ¶ 25.)

20 Additionally, Plaintiff incorporated some of the tubes into equipment it was fabricating
21 that required the tubes to be joined by the process of expansion.  All of the expanded tubes failed
22 the standard pneumatic pressure test by exhibiting signs of leakage.  (Compl. ¶¶ 26, 27.)  On
23 October 19, 2021, Plaintiff notified Defendant of the nonconformance of the tubes and informed
24 Defendant that it was rejecting 10,770 of the tubes.  (*Id.* ¶ 28.)  Plaintiff asserts that as a
25 consequence, it has suffered damages in amount not less than $1,548,488.  (*Id.* ¶ 29.)

26 A scheduling conference in this action was originally set for November 8, 2022.  (Doc. 5.)
27 However, the Court continued the conference on multiple occasions to allow for service of
28 Defendant through the Hague Convention pursuant to Federal Rule of Civil Procedure 4(f).  (*See*

Docs. 11, 12, 16.)

On July 12, 2023, Plaintiff filed a proof of service of the complaint and summons in this action, which indicated that Defendant was personally served though the Hague Convention on March 2, 2023. (Doc. 17.) The Clerk of the Court entered default against Defendant on July 25, 2023. (Doc. 20.)

Plaintiff filed the instant application for entry of default judgment against Defendant on November 17, 2023. By the motion, Plaintiff seeks default judgment in the amount of $1,189,320 in damages plus pre-judgment interest at 10% per annum. (Doc. 23.) The motion and related documents were not served on Defendant as no appearances had been made for Defendant. (Doc. 23-4.)

On December 12, 2023, Plaintiff filed a notice requesting that the Court delay consideration of the application for default judgment for two weeks given a change of circumstances. (Doc. 26.) In response to the request, the Court directed Plaintiff to file notice on or before January 4, 2024, informing the Court whether it intended to stand on the application as filed or if it was withdrawing the application. (Doc. 27.)

On January 4, 2024, Plaintiff filed a status report requesting that the Court proceed with consideration of the pending application for default judgment. Plaintiff also explained that since the application was filed on November 17, 2023, a new customer placed a purchase order with Plaintiff that would enable Plaintiff to use some of the rejected tubes purchased from defaulted Defendant. As a result, the amount of damages had been reduced. Plaintiff therefore requested that the Court consider the Amended Declaration of Jonathan Bristol in Support of Motion for Default Judgment (Doc. 28-1) instead of Mr. Bristol's original declaration (Doc. 23-2). The Amended Declaration sets out the basis for Plaintiff's revised damages computation. (Doc. 28 at 2.) As requested, the Court considers the amended declaration of Mr. Bristol (Doc. 28).

**II.     MOTION FOR DEFAULT JUDGMENT**

**A.  Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the

action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

**B. Discussion**

**1. Service of Process**

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388, at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912, at *2 (E.D. Cal. Dec. 15, 2010).

Defendant is a corporation, partnership, or association located in Mumbai, India. (Compl. ¶ 3.) Federal Rules of Civil Procedure 4(f)(1) and 4(h)(2) set forth the requirements for serving a foreign corporation, partnership, or association. These rules allow for service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). "Both the United States and India are signatories to the Hague Service Convention." *Vashisht-Rota v. BlueChip Servs.*, No. 22-cv-00900-AGS-KSC,

2023 WL 3773915, at *1 (S.D. Cal. Apr. 27, 2023) (noting that Article 2 of the Convention requires participating countries to create and designate a Central Authority which will undertake to receive requests for service) (citations omitted).  Per Plaintiff, India permits service through its Central Authority, the Department of Legal Affairs (Central Authority)." (Doc. 17 at 2.)

On August 16, 2022, Plaintiff's counsel sent a request to the Indian Ministry of Law and Justice for service through the Hague Convention. (*See* Doc. 10, Ex. 1.) On July 5, 2023, Plaintiff's counsel received a Service Report and accompanying documents from the Indian Ministry of Law and Justice, which states that summons/notice/documents "have been served appropriately" on Solitaire Overseas. (Doc. 17-1 at 2.) An accompanying report from the Assistant Registrar for the Indian High Court in Bombay, India states that Solitaire Overseas was "duly served" on March 2, 2023. (*Id.* at 3.)  The report references An Affidavit Of Solemn Affirmation Of Service For Process Of Another Court executed by the Bailiff of the Court of Small Causes, Mumbai on March 2, 2023. (*Id.* at 5.) The Bailiff "solemnly affirm[s]" that he served a duplicate copy of the documents provided by Plaintiff on Mr. Vishal Sheth at the Opera House address for Defendant in Mumbai, India. (*Id.*) The Bailiff further states that he "obtained [Mr. Sheth's] acknowledgment on the original." (*Id.*) A Bailiff's Report dated March 2, 2023 confirms these facts. (*Id.* at 13.) A marked copy of Plaintiff's Request for Service Abroad of Judicial or Extrajudicial Documents shows Mr. Sheth's signature dated March 2, 2023, as well as the signature of an official with the Central Authority of the Indian Ministry of Law and Justice dated May 25, 2023. (*Id.* at 9-10.)

Based on this information, the Court finds that Plaintiff properly served Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

### 2. The *Eitel* Factors Weigh in Favor of Default Judgment

#### a. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F. Supp. 2d 1197, 1200-01 (C.D.

Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were not entered. Given the entry of default, Plaintiff has no other means by which to recover against Defendant. This factor weighs in favor of default judgment.

### b. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint forwards two claims for relief against Defendant: breach of express warranty and breach of implied warranty of merchantability arising from the sale of goods. (Compl. ¶¶ 30-43.)

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, a party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. Fed. R. Civ. P. 44.1. None of the parties here gave written notice of an intent to raise an issue concerning the law of a foreign country. The Court is therefore not obligated to attempt to apply the law of India. *Com. Ins. Co. of Newark, N. J. v. Pac.-Peru Const. Corp.*, 558 F.2d 948, 952 (9th Cir. 1977). Absent a challenge from Defendant, and because no party has invoked foreign law, the Court presumes that California law applies to Plaintiff's claims. *Cf. G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018) ("Where the parties present no authority, or insufficient authority, regarding the meaning of foreign law, we permit a court to conclude that the parties have acquiesced in the application of the law of the forum."). "[U]nder California law, the California Commercial Code applies to any contract for the sale of goods*." Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 890 (S.D. Cal. 2021) (citing Cal. Com. Code § 2102).

### Breach of Warranty

To prevail on a breach of express warranty claim, the burden is on the plaintiff to prove "(1) the seller's statements constitute an "affirmation of fact or promise" or a "description of the goods"; (2) the statement was "part of the basis of the bargain"; and (3) the warranty was breached." *Caldwell v. Nordic Nats., Inc.*, --- F. Supp. 2d ---, 2024 WL 24325, at *8 (N.D. Cal.

7

1  Jan. 2, 2024) (quoting *Weinstat v. Dentsply Int'l, Inc*., 180 Cal. App. 4th 1213, 1227, 103
2  Cal.Rptr.3d 614 (2010); Cal. Com. Code § 2313(1).); *see also Martinez v. Ford Motor Co.*, No.
3  22-cv-1082-MMA (BGS), 2022 WL 14118926, at *6 (S.D. Cal. Oct. 24, 2022) ("Under
4  California law, to establish breach of express warranty, 'the plaintiff must prove (1) the seller's
5  statements constitute an affirmation of fact or promise or a description of the goods; (2) the
6  statement was part of the basis of the bargain; and (3) the warranty was breached.'").

Plaintiff alleges that through representations made in the invoice, Defendant affirmed in writing the fact that the tubes would meet the ASME SA249 TP316L standard and that the tubes would pass eddy current testing.  Defendant's affirmation of these technical specifications became part of the basis of the bargain between the parties.  (Compl. ¶ 31.)  The tubes did not conform to the required specifications.  (*Id.* ¶ 32.)  These allegations are taken as true due to Defendant's default, and Plaintiff has stated a claim upon which it may recover.

<u>Breach of Implied Warranty of Merchantability</u>

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314.  An implied warranty guarantees that "[g]oods to be merchantable must be at least such as (a) [p]ass without objection in the trade under the contract description."  *Id.*  A plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406, 7 Cal.Rptr.3d 546 (2003)).

Plaintiff alleges that Defendant is a merchant of stainless steel tubes of the type sold to Plaintiff.  The tubes are not merchantable because they could not pass without objection in the trade under the description set forth in the purchase order and the invoice, they are not fit for the ordinary use in cooling or other thermal devices, and they are not of even kind and quality.  (Compl. ¶¶ 39, 40.)  These allegations are taken as true due to Defendant's default, and Plaintiff has stated a claim upon which it may recover.

Based on the above, the Court finds that the second and third *Eitel* factors weigh in favor

8

of default judgment.

### c. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc*., 238 F. Supp. 2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, the Complaint sought $1,548,488.00 in damages. (Compl. at 6.) Defendant's motion for default judgment originally sought payment of $1,189,320 in damages plus prejudgment interest.[2] (Doc. 23-1 at 14 ("BAC is therefore entitled to direct damages in an amount of $419,633, plus incidental damages in an amount of $769,957, or $1,189,320. BAC is also entitled to pre-judgment interest.").) Because of intervening mitigation of damages, this amount of damages has been reduced to $384,392, which is based on direct damages in an amount of $174,215, plus incidental damages in an amount of $210,177, along with pre-judgment interest. (Doc. 28-1, Amended Decl. of Jonathan Bristol ¶¶ 26, 29.) The amount of money at stake, particularly with mitigation, does not seem unreasonable in light of the allegations. Accordingly, this factor does not weigh against entry of default judgment.

### d. The Possibility of a Dispute Concerning Material Facts

Following the Clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists. Further, Defendant's failure to file an answer in this case supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default

---

[2] This amount seems to be misstated. The supporting declaration identifies $418,171 in direct damages, not $419,633. (Doc. 23-2, Decl. of Jonathan Bristol ¶ 19 ("BAC's direct damages are (i) $184,974 paid to Solitaire . . . *plus* (ii) $233,237, . . . for a total of $418,171.") Based on this corrected calculation, the original request equates to total damages of $1,188,128 (direct damages in an amount of $418,171, plus incidental damages in an amount of $769,957).

judgment.

e. <u>Whether the Default Was Due to Excusable Neglect</u>

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Here, the Court finds the possibility of excusable neglect to be remote.  According to the record before this Court, the Bailiff for the Court of Small Causes at Mumbai obtained the signature of Vishal Sheth, the "Proprietor/Manager" for "SOLITAIRE OVERSEAS" on the Request for Service Abroad of Judicial or Extrajudicial Documents.  (Doc. 17-1 at 9.)  This signature indicates that Mr. Sheth received a copy of the service documents in this case, including the summons and complaint.  (*Id.*)  This factor therefore does not weigh against entry of a default judgment.

f. <u>The Strong Policy Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not appeared in this action.  Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

**3. Damages**

"A plaintiff who rightfully rejects non-conforming goods may recover any part of the purchase price paid . . . , and may also seek, *inter alia*, (1) the cost of 'cover' by reasonably purchasing replacement goods and recovering the difference between the cost of the goods and the contract price, plus incidental or consequential damages, [Cal. Com. Code] § 2712, or (2) seek specific performance or replevy the goods, *id.* at § 2711(2)." *Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 946 (S.D. Cal. 2021).

According to the allegations in the complaint, Plaintiff informed Defendant of the defects in the tubes after receiving third-party reports, but Defendant never offered to replace or pay for

the defective tubes. (Compl. ¶¶ 19, 20, 22, 25.) Once it became clear that the tubes were nonconforming, and that Defendant did not intend to cure the defects, Plaintiff notified Defendant that it was rejecting 10,770 of the tubes. (Compl. ¶ 28.)

Plaintiff now seeks recovery for 3,017 non-conforming tubes. (Doc. 23-1 at 14.) For those 3,017 tubes, Plaintiff paid Defendant $184,934. (Doc. 23-2, Bristol Decl. ¶16.) The cost of Plaintiff's good-faith and reasonable cover was $418,171. (*Id.* at 17.) As corrected, Plaintiff originally asserted that it was entitled to direct damages in the sum of $184,934 (the purchase price), plus $233,237 (the difference between the purchase price and the cost to cover), or $418,171. However, in December 2023, Plaintiff received an order from a new customer for which Plaintiff can use the rejected tubes purchased from Defendant. (Doc. 28-1; Amended Bristol Decl. ¶ 4.) As a result, the value of the rejected tubes in connection with Plaintiff's new customer must be subtracted from the direct damages amount, resulting in direct damages of $174,215. (*Id.* ¶¶ 22, 25.)

Incidental Damages

Plaintiff also is entitled to incidental damages. *See* Cal. Com. Code §§ 2712, 2715 ("Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.").

Plaintiff incurred $769,957 in expenses in connection with its attempts to utilize the nonconforming tubes (before discovering the defects) and its efforts to evaluate and mitigate the defects. (Doc. 23-2, Bristol Decl. at ¶ 21 (detailing expenses caused by the tubes' nonconformance.) However, with Plaintiff's subsequent ability to use the rejected tubes for its new customer, the amount of incidental damages is reduced to $210,177. (Doc. 28-1, Amended Bristol Decl. ¶¶ 27-29.)

Plaintiff is therefore entitled to direct damages in an amount of $174,215, plus incidental damages in an amount of $210,177, or $384,392 in total damages.

Prejudgment Interest

11

Plaintiff asserts entitlement to prejudgment interest at the statutory rate of ten (10%) pursuant to California Civil Code § 3287.[3] (Doc. 23-1 at 15.) "[U]nder California Civil Code § 3287, prejudgment interest is recoverable in any action in which damages are certain or 'capable of being made certain by calculation' and the right to recover such damages is vested in the plaintiff on a particular day." *Diamondstar Ent. Holdings, LLC v. THH, LLC*, 641 F. Supp. 3d 849, 870 (C.D. Cal. 2022). "Section 3289 provides that, if a party is entitled to prejudgment interest on a breach of contract claim, and the contract "does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." *Id.* (quoting Cal. Civ. Code § 3289(b).)

As the damages here are made certain by calculation, the Court finds that Plaintiff is entitled to prejudgment interest at a rate of 10% per annum from the time of the breach. Plaintiff indicates that the last shipment of tubes from Defendant was received in May 2020, and calculates the amount of interest on Plaintiff's direct damages from June 1, 2020, through January 4, 2024, as equal to $62,580. (Doc. 28-1, Amended Bristol Decl. ¶¶ 31, 32.) Plaintiff also indicates that the latest time it incurred incidental damages was August 27, 2021, and calculates the amount of interest on Plaintiff's incidental damages through January 4, 2024, as equal to $49,464. (*Id.* ¶¶ 33, 34.)

### V.  CONCLUSION AND RECOMMENDATION

For the reasons stated, it is HEREBY RECOMMENDED as follows:

1. Plaintiff's application for entry of default judgment, as amended, be GRANTED;
2. Judgment be entered in favor of Plaintiff Baltimore Aircoil Company, Inc. and against Defendant Solitaire Overseas in the amount of $384,392 in damages plus pre-judgment interest at 10% per annum from June 1, 2020, for direct damages and from August 27, 2021, for incidental damages.

These Findings and Recommendations will be submitted to the United States District

---

[3] Plaintiff cites the California Code of Civil Procedure. The Court presumes, however, that Plaintiff means to cite the California *Civil Code*, which provides for prejudgment interest. (Doc. 23-1 at 15, 16.)

Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 11, 2024**                         /s/ Barbara A. McAuliffe
                                                    UNITED STATES MAGISTRATE JUDGE

13